WALTER A. WOOD, and another,

*vs.*

LEROY FINSON, and another.

Hancock.    Opinion January 24, 1898.

*Evidence.    Relevancy.    Exceptions.*

Oftentimes when the issue is whether a particular contract was made between the parties, and the evidence is conflicting as to what the contract was, it is competent for a defendant to show the value or character of the property which he was to receive as compared with that in the contract claimed by the opposite party, as tending to show the improbability of the contract as alleged by such party.

In this case, while the fact of whether there had been insurance effected on previous sales or not, might not be conclusive as to what was done in this particular instance, it was admissible on the question of probability or improbability of the contract being as claimed by the plaintiff.

Testimony should not be excluded as irrelevant, which has a tendency, however remote, to establish the probability or improbability of the fact in controversy.

A special finding by the jury may render objections to the admission of evidence unavailable, when the objections might otherwise be tenable.

Exceptions will not be sustained unless it is shown affirmatively that the excepting party has been aggrieved by the ruling complained of.

See *Wood* v. *Finson*, 89 Maine, 459.

ON MOTION AND EXCEPTIONS BY DEFENDANTS.

This was an action of assumpsit brought by the plaintiff, who was an oil merchant in Boston, against the defendants to recover the value of certain oil purchased of him during the years 1894 and 1895 all of which is admitted to have been paid for except the item of October 4, 1894, for twenty barrels of kerosene oil amounting to $87.28.

The verdict was for the plaintiff for the sum of $95.50.

In addition to a general motion, the defendants took exceptions to the admission of testimony at the trial and which are stated in the opinion of the court.

The justice presiding at the trial, in his charge to the jury, instructed them, inter alia, as follows:

"Now, in the first place, was there any agreement made between Carlow, or an agreement entered into, in the course of business transactions with the defendants, that insurance should be put upon all goods which would include these particular goods? Well, you heard the testimony of the two defendants upon that point, and they say so. Now, if there was such an agreement and it had not been cancelled or superseded, then it would hold good. Then the question arises, what authority had Carlow to make such an arrangement. Well, if he was a general sales-agent, he had a right to enter into contracts of sale, conditions of sale, arrangements about sale, including the delivery and shipment of goods. If he had no authority, it would not affect the defendants unless they knew that he had none, because the presumption is that the party who has a right to solicit orders and make sales, has a right to do whatever pertains to such things, the right to make prices, the right to make conditions, the right to do whatever the owner could do, or might do under the same circumstances. Now it is not material to this case whether he informed the defendants that he had a right or not to make such arrangements, except just in this way, if they did not know that he had any such authority, or if the plaintiffs did not know that he made any such contracts or bargain as a part of the business or contracts with these defendants, that would not affect the defendants, but it might bear on the question whether he would be likely to make an arrangement which he had

no express authority to make between him and his principal. Now, was there such an arrangement made? You will understand that it is immaterial whether the plaintiffs knew it or not that their agent had overstepped his authority—if he did—because the defendants would have the right to rely on such an arrangement made with such an agent under such circumstances. If you find there was such an understanding and that it applied to future contracts the defendants were to make right along until some other arrangement was made, why, the plaintiffs would be bound by it unless released by some other consideration.

"That is one defense set up by the defendants. Another is that they made an arrangement with Mr. Emery himself by which they should be considered released from the obligation to pay for the twenty barrels that were lost. Now, in the first place, had Mr. Emery a right to make such a contract? As a part of the sale of the goods, had he a right to release this indebtedness for the lost goods?

"I feel that I must say to you from the opinion of the court which has been rendered in this case, [89 Maine, 459] that he had, if he was a general soliciting agent, because whether he had authority to act or not, if the defendants had no notice that he had not such authority they would have a right to presume and assume that he had; that is, that in making a contract for the sale of goods, he could make the whole contract; he could enter into the bargain for the sale of the goods in consideration that this release was to inure for the benefit of the defendants.

"If the defense makes out its position on either question the verdict must be for the defendants. If the plaintiffs should have insured and the compensation for the property was thereby lost, the plaintiffs cannot recover. Or, if you find there was no such insurance in this particular instance on the theory that Mr. Emery is correct, then the plaintiffs would recover unless the defense prevails on the second point, and that is the relinquishment of the claim for the continuing of the business."

In addition to instructions as to the general verdict, the presiding justice submitted to the jury two special questions, namely:

" Was there an understanding between the parties, that all goods shipped by vessel by the plaintiffs to the defendants should be insured by the plaintiffs for the benefit of the defendants, not waived in this case?"

" Did or not the Mr. Emery, the plaintiffs' agent, agree to cancel the plaintiffs' claim for the lost goods on the consideration that the defendants would continue purchasing goods of the plaintiffs?"

Both these special questions were answered by the jury in the negative. And a general verdict was rendered for the plaintiff.

To the rule of the presiding justice admitting the testimony hereinbefore stated, the defendant seasonably excepted.

*H. E. Hamlin,* for plaintiff.

*O. F. Fellows,* for defendants.

SITTING: EMERY, FOSTER, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

FOSTER, J. Assumpsit by the plaintiffs, oil merchants in Boston, to recover of the defendants, traders in Bucksport, the value of twenty barrels of kerosene oil, to be delivered free on board vessel in Boston.

Plaintiffs made the sale through one Emery, a general traveling salesman and agent of theirs. The plaintiffs had previously employed one Carlow as their salesman and agent, who had repeatedly sold the defendants burning oil. Emery succeeded him, and made sale of the oil in suit.

The defense set up that the contract of sale called for insurance of the oil by the plaintiffs, instructions having been given, as the defendants claim, to Carlow always to insure oil shipped to them by vessel, and that from a failure to do so in reference to this order sold by Emery, the defendants lost its value, the oil having been lost at sea.

Numerous exceptions are taken to the admission of certain questions and answers in relation to the authority of the two agents, and instructions received by them from the plaintiffs. Also in relation to sales previously made by Carlow, and whether or not insurance was placed on those.

It is claimed that this evidence in relation to other transactions was too remote, irrelevant, and therefore not admissible. We think it was admissible. Oftentimes, when the issue is whether a particular contract was made between the parties, and the evidence is conflicting as to what the contract was, it has been held competent for a defendant to show the value or character of the property which he was to receive as compared with that in the contract claimed by the other side, as tending to show the improbability of the contract being as alleged by the plaintiff. *Nickerson* v. *Gould*, 82 Maine, 512; *Upton* v. *Winchester*, 106 Mass. 330; *Norris* v. *Spofford*, 127 Mass. 85; *Parker* v. *Coburn*, 10 Allen, 82. So evidence of a person's poverty and bad credit has been held admissible on the issue of whether goods were sold on the credit of such person or of a third party, as bearing on the improbability of the plaintiff's making the sale on his credit. *Lee* v. *Wheeler*, 11 Gray, 236. So in this case, while the fact of whether there had been insurance effected on previous sales or not, might not be conclusive as to what was done in this particular instance, it was admissible on the question of probability or improbability of the contract being as claimed by plaintiff. It was in accordance with this principle that the court, in *Trull* v. *True*, 33 Maine, 367, held that "testimony cannot be excluded as irrelevant, which would have a tendency, however remote, to establish the probability or improbability of the fact in controversy." See also *Tucker* v. *Peaslee*, 36 N. H. 167, 168; *Huntsman* v. *Nichols*, 116 Mass. 521, where it was held that, although the authenticity of the note in suit was the only issue, yet the business transactions between the parties had some bearing upon the probability of the indorsement having actually been made by the defendant, and were therefore admissible in evidence.

One of the principal points of contention by the defense was that there was a contract or understanding that all goods shipped by vessel by the plaintiffs to the defendants should be insured. The exceptions in part relate to the admission of evidence bearing upon the authority of the agents, and instructions to them from the plaintiffs.

But even if the defendants' objections were tenable, the special findings of the jury have rendered them unavailing. The jury, upon special findings, have decided that there was no understanding between the parties that goods shipped by vessel to the defendants should be insured for the benefit of the defendants. If there was no such understanding, then, whether the plaintiffs did or did not give authority to their agents to enter into any such contract, is of no consequence. The charge of the presiding judge was that if there was any such understanding,—" if the plaintiffs should have insured, and the compensation for the property was thereby lost, the plaintiffs cannot recover."

And so far as the exceptions relate to the inadmissibility of any evidence coming from the plaintiffs as to Emery's having no authority to cancel the plaintiffs' claim for the lost goods in consideration of the defendants' continuing to purchase goods of the plaintiffs, the special finding of the jury has settled all objections upon that point, inasmuch as they have said that there was no such agreement. Hence authority, or lack of authority, became immaterial.

Therefore the exceptions cannot be sustained, because to be sustained it must be shown affirmatively that the excepting party has been aggrieved by the ruling complained of. *Bryant* v. *Knox & Lincoln R. R. Co.*, 61 Maine, 300; *State* v. *Pike*, 65 Maine, 111; *Soule* v. *Winslow*, 66 Maine, 447.

*Exceptions and motion overruled.*